### NOE GAGNON'S CASE.

#### Somerset.    Opinion October 5, 1925.

*Under the Workmen's Compensation Act an employee, who, at the time of the injury, was engaged in loading logs at a landing onto cars, owned and operated by the employer in conveying the logs from the landing to his sawmill to be manufactured, the employer having nothing to do with the cutting and hauling of the logs to the landing, is engaged in an employment within the operation of the act, where employer's assent covered "Manufacturing Lumber" and his policy included "Logging railroad-operation."*

Whether or not an employee at the time of his injury was engaged in an employment within the operation of the compensation act, is a question of fact to be determined by the Commission, and if any rational view of the evidence supports it, the decision is beyond review on appeal.

Should the ultimate conclusion that an injured employee was within the operation of the act be based on probative facts found which fail utterly to establish the ultimate facts found, the finding could be annulled.

But where, though the facts are not in dispute, ordinary minds might ordinarily conclude oppositely from the same elemental premises, the question is for the trier of facts.

In the proceeding for compensation, the Commissioner's finding on the evidence, that claimant was an employee engaged in manufacturing lumber, and not logging, is one of fact.

The line of demarcation between some evidence and no evidence, between facts settled finally and no facts at all, may be faint, obscure, and not easily definable, yet if the line be there, experience and sense as the companions of reason will bid the rejection of the suggestion of the barrenness of evidence, even before the divisional line is definitely traced.

In the instant case it is not to be said that the conclusion drawn by the Commissioner on the evidence is unreasonable,—that it is erroneous as a matter of law.

On appeal.   Workmen's compensation case.   Petitioner was injured while working on a landing in the woods loading logs on cars owned and operated by the Jackman Lumber Company, one of the respondents, by having his hand caught and crushed between two logs, the cars being used to convey the logs from the landing to the mill of Jackman Lumber Company where they were manufactured.   Compensation was awarded and an appeal taken.   The issue involved was

as to whether the petitioner at the time of the injury was performing work for the Jackman Lumber Company covered by its written assent and industrial insurance policy. The employer filed an assent for "Manufacturing Lumber," and in its policy was included "logging railroad-operation" and excluded logging and lumbering operations. Appeal dismissed with costs. Decree below affirmed.

The case fully appears in the opinion.

Claimant appeared without counsel.

*Merrill & Merrill,* for respondents.

SITTING: WILSON, C. J., DUNN, DEASY, STURGIS, BARNES, JJ.

DUNN, J. Appeal by an insurance carrier from a decree in favor of a claimant for compensation under the Workmen's Compensation Act.

When, in the course of and out of his employment, accidental physical injury befell Noe Gagnon, he was "rolling the landing."

There is no question about the accident, the extent of the injuries received, the work actually being performed by the claimant, nor the sufficiency of the answer, nor that any condition, but one, is unsatisfied. The contest is whether in his employment the employee was within the boon of the protection of the act.

The employer in becoming an assenter excluded logging and lumbering operations. Assent was restricted to employees in its business of manufacturing lumber. As incidental to or connected with that business was the employer's logging railroad.

The case was heard before the Chairman of the Industrial Accident Commission. He found the fact to be that the injured man was doing work auxiliary to the railroad, which work should be treated as assisting in the manufacture of lumber. Award of compensation was made, enforcing decree was entered, and appeal followed.

Whether the finding of fact is supported by legal evidence is the limit of passing in review. Thus is the declaratory fiat of the Legislature. For the appeal to be sustained, no fraud being involved, any evidence on which the award was rested must be set down as equal to nothing. R. S., Chap. 50, Sec. 4, as amended by 1919 Laws, Chap. 238; *Hight* v. *Company,* 116 Maine, 81; *Simmons' Case,* 117 Maine, 175; *Westman's Case,* 118 Maine, 133; *Mailman's Case,* 118 Maine, 172; *MacDonald* v. *Company,* 120 Maine, 52; *Gauthier's Case,*

120 Maine, 73; *Orff's Case*, 122 Maine, 114; *Williams' Case*, 122 Maine, 477; *Spiller's Case*, 122 Maine, 492; *Ross' Case*, 124 Maine, 107.

In familiar parlance logging is over when the logs are landed. And, after this, is driving. The driver rolls the logs from the landing into the watercourse, whence the drive is floated and urged on and its course directed down to the destined place for sale, or to the manufactory.

In woodcraft as elsewhere in the affairs of men relationships and rights and duties flow from and are differentiated by contracts. A contract might call for the landing of logs in the stream. Then there would be no landing to roll. But alike with the lumberman, running the operation on his own account from the forest to the boom, or to his own mill, and with the logger, or with the independent contractor, each is through hauling, or done logging, when his logs are on the landing. These are colloquial phrases.

What has been said speaks of years ago. In the main matters are still the same as aforetime. But another order has been attained. A privately owned railroad is substitute for a public highway on water. And it was for the Commissioner to harmonize the old with this new condition.

The Jackman Lumber Company, the employer in this case, had its sawmill at Moose River. It maintained no camp in the woods. It was not a lumber operator. It was not a logger. Independent contractors supplied logs to it. They cut and hauled the logs. The landing was fifteen miles from the mill. Trains of log-laden cars arrived over the company's railroad, were unladen of their lading at the mill. The contractors had loaded the cars, when they were at hand, in the stead of piling the logs on the landing. Under the contracts the surplus logs only, so to speak, were landed.

All the logs were hauled. Some were on the landing. It was for the company to load the cars. Gagnon came to do it. He may or not have come with his cant dogs and handspikes as a contractor. It is inconsequential. He came at the instance of the company. He jobbed it for twenty days before going on day work, as he says. Twenty-five days later he got his hand hurt.

As the Commissioner saw and understood the situation, this case of Gagnon's was jammed in between analogousness to the starting of a drive of logs on the one side, and the business of manufacturing

lumber, with the railway operating to the very jam in conceded appurtenance to the business, on the other. The Commissioner broke the jam. Gagnon's Case was landed on the manufacturing side. In the Commissioner's view, it was the mode of hauling logs which was advanced, the more so than the method of driving them, in the evolution of logging and lumbering.

It is easy and natural to say that rolling the landing has to do with driving logs. But more than this is involved. The finding by the Commissioner shall not be disturbed if any competent substantive evidence, or reasonable inferences therefrom, warrants it. In this wise is the posit of controlling principle met at the threshold of of consideration. *Mailman's Case*, supra; *Jacque's Case*, 121 Maine, 353.

Whether or not an employee at the time of his injury was engaged in an employment within the operation of the compensation act, is a question of fact to be determined by the· Commission, and if any rational view of the evidence supports it, the decision is beyond review on appeal. *Smith* v. *Coles* (1905) 2 K. B., 827; ·*George* v. *Industrial Acc. Com.*, (Cal.), 174 Pac., 653. A finding is not at all events impregnable. Should the ultimate conclusion that an injured employee was within the operation of the act be based on probative facts found which fail utterly to establish the ultimate facts found, the finding could be annulled. *Miller* v. *Industrial Acc. Com.*, (Cal.), 178, Pac. 960. But·where, though the facts are not in dispute, ordinary minds might ordinarily conclude oppositely from the same elemental premises, the question is for the trier of facts. *Clark's Case*, 124 Maine, 47. In the proceeding for compensation, the Commissioner's finding on the evidence, that claimant was an employee engaged in manufacturing lumber, and not in logging, is one of fact. *Smith* v. *Coles*, supra; *Posey* v. *Moynehan*, 186 N. Y., Supp. 753.

"In ordinary questions of law," to quote from Mr. Seargent Prentiss, "decision travels with confidence and ease upon the highway of precedent, but penetrates with slow and doubtful steps among the less beaten paths." No question exactly as the one presented here has arisen and found answer in our reports. None the less.lights are by to guide in searching for the existence of mere evidence.

Employers of loggers and lumberers and drivers may come within the compensation act if they so elect. *Oxford Paper Company* v. *Thayer*, 122 Maine, 201; *Mary A. White's Case*, 124 Maine, 343. In

examining into the scope of an assent, the assenting instrument and the accompanying insurance policy, are to be read. *Fournier's Case,* 120 Maine, 191; *Michaud's Case,* 121 Maine, 537; *Cormier's Case,* 124 Maine, 237; *Mary A. White's Case,* supra. Logging and lumbering operations are expressly excluded from this policy. What is meant by employment in logging and lumbering operations? The Legislature has not given a definition, but has only by implication pointed out that the expression includes the work of cutting, hauling, rafting, and driving logs. R. S., Chap. 50, Sec. 4, as amended by 1919 Laws, Chap. 238, Sec. 4.

The Jackman company, when it took out and filed the policy, was not cutting logs. It was not hauling logs, unless drawing them on and along its private railroad was hauling. The mill had logs "through jobbers"—"by the thousand." And hauling by the jobber, or contractors, ended when there were no more logs to be hauled, and all the logs save those the railroad had already taken away, were on the landing.

Loading the logs from the landing was for the company. The company loaded by its own crews. Again, it "jobbed" the loading. In the evidential portrait Mr Gagnon is first seen as a jobber. His job came to an end. He was hired to labor for a daily wage. It would seem that the manner of paying him, and not the character of his work, was changed. "We were running a crew on a branch of the railroad," testified an executive of the company. This crew was loading the logs. It was not the crew that had actual connection with the operating of the train on the rails. The train crew neither loaded nor unloaded logs. The loading crew remained at the landing, and of this crew was Gagnon.

Operating the railroad was an adjunction to manufacturing lumber. The assenter and its insurance carrier make this prominent in the record. Stress is laid that the contention of the nonexistence of award-supporting evidence is upheld by the accounting system of the employer. The system is comprehensive in detail. The laundry, the sawmill, an hotel, the railroad, blacksmithing, the clerical force, construction and repairs, not to pause to mention any other, each has appropriate page. And each account closes into another that the gain or loss of the business, or the result in any department, may be known.

So, in the effort to fall this landing man within the exclusion of the assent, there was introduced other testimony to the effect that loading the logs was a distinct business; distinct from the railroad; distinct from the mill; "as separate as the logging end," said the witness.

Apparently, from the complete story of events and their propinquity, the Commissioner found that car loading was separate from the logging end and had to do with railroading, and that the railroading and the logging which preceded it, merged eventually in the composite of manufactured lumber.

The line of demarcation between some evidence and no evidence, between facts settled finally and no facts at all, may be faint, obscure, and not easily definable. And still yet, if the line be there, experience and sense as the companions of reason will bid the rejecting of the suggestion of the barrenness of evidence, even before the divisional line is definitely traced.

On the evidence it is not to be said that the conclusion of facts drawn by the Commissioner is unreasonable,—that it is erroneous as a matter of law. Nor is the conclusion without general likeness in recorded authority. The transfer of coal by a railroad company from a schooner to its cars is "operating a railroad." *Daley* v. *Boston & Albany, etc. Co.*, 147 Mass., 101.

*Appeal dismissed with costs.*
*Decree below affirmed.*