**Leonce T. MICHAUD**

v.

**CHARLES R. STEEVES & SONS, INC., et al.**

Supreme Judicial Court of Maine.

Jan. 19, 1972.

Rudman, Rudman & Carter by Lawrence E. Merrill, Bangor, Wakine G. Tanous, E. Millinocket, for plaintiff.

Mitchell & Ballou by James E. Mitchell, John W. Ballou, Bangor, for defendants.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY and WERNICK, JJ.

WEBBER, Justice.

Appellant Michaud seeks review of a decision of the Industrial Accident Commission which determined that Michaud was not in the employ of appellee Steeves when he suffered an accidental injury while working on the premises of one Wena Emerson. Steeves is a supplier of hardware and plumbing equipment and as such has had occasion frequently to contract for the services of Michaud on a job by job basis to perform carpentry work incidental to the installation of its products. In the instant case Steeves had contracted with Mrs. Emerson to replace a sink and counter and install new cabinets in her kitchen and arranged with Michaud to do the necessary carpentry work on the job. Whether Michaud did this work as an employee of Steeves or as an independent contractor is debatable but need not concern us here for reasons which will appear.

As the kitchen work was nearing completion Mrs. Emerson made an independent arrangement with Michaud to install for her a new kitchen ceiling. It was during the course of the ceiling work that Michaud suffered the fall which gives rise to this claim. On the basis of credible supportive evidence the Commission found in effect that Steeves was not concerned with the ceiling job other than to supply the materials therefor on Michaud's order and that at the time of the accident Michaud was not in the employ of Steeves but was working directly for Mrs. Emerson.

Certain provisions of the statutes are applicable and controlling here. 39 M.R.S.A., Sec. 2(5) provides in part:

"'Employe' shall include * * * every person in the service of another under any contract of hire, express or implied, oral or written * * *."

Section 99 includes this provision:

"His (Commissioner's) decision, in the absence of fraud, upon all questions of fact shall be final * * *."

Under the statute the petitioner was first required to show that he was doing the ceiling work for Steeves under "a contract of hire, express or implied, oral or written." Unless that could first be shown, the issue as to whether he was employed as an employee or as an independent contractor would never be reached. The Commission decided the primary issue against the petitioner and concluded that with respect to the ceiling he was not working for Steeves

*in any capacity.* Thus cases dealing with the criteria on which determination is made as to whether one furnishing services is an employee or an independent contractor have no application here. It will serve no useful purpose to recite the evidence in detail. It suffices to say that there was credible evidence upon which to base the finding of the Commission. Under these circumstances the decision below will not be disturbed.

Appeal denied. Ordered that an allowance of $350.00 to cover fees and expenses of counsel, plus cost of the record, be paid by the Appellees to the Appellant.

WEBBER, WEATHERBEE, POMEROY and WERNICK, JJ., concurring.

DUFRESNE, C. J., dissenting.

DUFRESNE, Chief Justice (dissenting).

With all due respect to the opinions of my Colleagues as expressed by Mr. Justice Webber for the Court, I am unable to agree and would sustain the appeal. I regret, however, that I cannot express my dissenting views with equal brevity.

The Industrial Accident Commission decreed that Leonce T. Michaud was not entitled to compensation "because the relationship of master-servant or employer-employee did not exist between the petitioner and the respondent on May 10, 1969, when said petitioner, Leonce T. Michaud, was injured."

The Commission's ultimate conclusion was reached on a very narrow view of the record before it. Its decision throws the following light upon the rationale undergirding the decree.

"Whatever the employment relationship may have been, between Mr. Michaud and Steeves Inc., at the beginning of the work at the Emerson's house, the evidence indicates to us that at the time Mr. Michaud was installing the ceiling he was not an employee of Steeves Inc.

Although Mr. Michaud's testimony on the point is contradictory, he did state in response to a question from his attorney that *Mrs. Emerson asked him to put up the ceiling.* Mr. Steeves said he did not agree with Mrs. Emerson to install the ceiling. Steeves supplied the ceiling tile but did not finish the ceiling work after Mr. Michaud was hurt on May 10, 1969. Apparently, Mrs. Emerson arranged for a third party to do it. It appears that Steeves had little or no control over Mr. Michaud with regard to the ceiling installation. We find no evidence that Steeves supervised Mr. Michaud's work on the ceiling."

Charles R. Steeves & Sons, Inc., hereinafter referred to as Steeves, operated a hardware store and a plumbing shop in Millinocket, Maine. For many years the Company had been contracting for work of installing windows and plumbing supplies, including work of renovation or remodeling of bathrooms and kitchens. On April 28, 1969 one Mrs. Emerson purchased a kitchen sink from Steeves and the Company agreed to remove the old sink and install the new one. Although the Company carried on its regular payroll plumbers and electricians, it did not have in its general employ a carpenter to do the necessary carpentry work incidental to the jobs of installation or remodeling it undertook. For some six or seven years, it had called upon Mr. Michaud, although not exclusively, to do the carpenter work required in the several jobs which it had agreed to do. Mrs. Emerson's initial request was to have her old kitchen sink removed and her new one installed. Mr. Steeves, the treasurer of the defendant corporation, showed Mr. Michaud the work to be done at the Emerson home and the plaintiff did the carpentry work involved. From the original sink installation, Mrs. Emerson expanded the project to include the installation of new cabinets, a formica top, wall paneling and ceiling tile. Steeves furnished all materials, including the ceiling tile which it ordered from another concern. Mr. Michaud was hired by Steeves at his price of $3.50

per hour. It was understood that he would arrange his schedule and carry on the necessary work so that the work of the regular crew and his own could be integrated. At times he had to suspend and wait until the supplies were delivered to the job site. On May 10, 1969 while working on a step-ladder in connection with the carpenter work on the ceiling, Mr. Michaud fell and received the injuries for which he seeks compensation under the Workmen's Compensation Act. Claimant's injury was sustained on a Saturday when he was working alone in the Emerson home and when the Company's regular crew would not be working. The evidence discloses that Mr. Michaud collected from Steeves the sum of $134.75 for all the time he put on the job, including pay for eight hours work on May 10, 1969, when he injured himself while working on the ceiling. It further appears that Mr. Michaud was a carpenter by trade and, during the years he worked for Steeves, advertized and offered his services to the public as a carpenter. It is undisputed that during the intermittent Emerson job, he worked also at another private job with which Steeves was in no way connected.

The threshold issue before us is whether Mr. Michaud at the time of his injury was an employee of Steeves within the meaning of 39 M.R.S.A., § 2(5) which provides in pertinent part:

> " 'Employee' shall include * * * every person in the service of another under any contract of hire, express or implied, oral or written * * *."

The evidence is undisputed that Steeves, in connection with the operation of its plumbing shop and hardware store businesses, had for years contracted with owners of property to do partial and at times complete renovation or remodeling jobs respecting kitchens and bathrooms. Mr. Steeves did testify that his Company undertook to furnish all incidental services in connection therewith, such as the electrical, plumbing and carpentry work. The Commission in reaching its ultimate conclusion ignored all evidence relative to the past relationship between Mr. Michaud and Steeves on other projects of similar nature as the Emerson job during the previous six or seven years. The Commission expressly disregarded the evidence respecting Mr. Michaud's status with Steeves on the Emerson project in so far as Steeves' undertaking involved Mr. Michaud's carpentry work in the installation of the sink and cupboards and the renovation of the kitchen walls but rendered its ultimate ruling that he was not an employee of Steeves upon consideration only of the evidence bearing upon the installation or renovation of the ceiling. In this, the Commission was in error.

The Commission's conclusion respecting the status of the workman must be reached upon consideration of all relevant evidence. To ignore the evidence of previous contractual relations between the plaintiff and Steeves, and to decide the issue of Mr. Michaud's status respecting the ceiling undertaking without consideration of the evidence of their relationship in connection with the installation of the sink, cupboards and kitchen walls at the Emerson home immediately prior to the ceiling work, was an arbitrary rejection of most valuable and probative evidence which had a natural tendency to throw light on the continuing project. Mr. Steeves indicated in his testimony that the renovation of bathrooms and kitchens, including the installation of ceilings therein, was within the course of the regular business of the Company in its operation of the hardware store.

The excluded evidence was relevant to the establishment of the relation of employer-employee between the plaintiff and Steeves during past hirings and especially in relation to a major portion of the work at the Emerson house immediately prior to the ceiling job, and, since the relationship of employer-employee once established continues until terminated by one of the parties, failure to consider such probative evidence was prejudicial to the plaintiff claimant. See, Krause v. Trustees of Hamline University of Minnesota, 1955, 243 Minn. 416, 68 N.W.2d 124.

"[I]f it is apparent that the Commission has disregarded evidence which has probative force in favor of the party against whom the decision has been rendered, the decision will be set aside." Albert's case, 1946, 142 Me. 33, 37, 45 A.2d 660, 661. Bernier v. Coca-Cola Bottling Plants, Inc., 1969, Me., 250 A. 2d 820; Robitaille's Case, 1943, 140 Me. 121, 34 A.2d 473.

Determination of injured party's status as employee or independent contractor or whether the claimant was working for the employer *in any capacity* cannot be made from examining solely the immediate circumstances surrounding the work on the date of the accident, but consideration must be given to the entire pattern of the injured party's present and past employment relations with the other party. Brown v. L. A. Penn & Son, 1969, Miss., 227 So.2d 470. The Commission has the duty under the Act to look at all the facts and circumstances. Casebeer v. Casebeer, 1967, 199 Kan. 806, 433 P.2d 399.

In applying the general principles of law governing the several relations of master and servant, employer-employee or independent contractor in cases involving the Workmen's Compensation Act, one must keep in mind the explicit legislative mandate that the Act must be liberally construed in favor of the workman. Kirk v. Yarmouth Lime Co., 1940, 137 Me. 73, 15 A.2d 184; Murray's Case, 1931, 130 Me. 181, 154 A. 352, 75 A.L.R. 720; Wardwell's Case, 1922, 121 Me. 216, 116 A. 447.

The Commission's disregard of evidence of probative force favorable to the appellant requires the reversal of the Commission's finding that "at the time Mr. Michaud was installing the ceiling he was not an employee of Steeves Inc." The plaintiff would be entitled at least to a new hearing, where perhaps other persons knowledgeable of the facts such as Mrs. Emerson and Mr. Pelletier, Steeves employee, may throw more light on the situation.

Where, however, the evidence as a whole is substantially undisputed and establishes the claimant's entitlement to an award of compensation as a matter of law, I would remand to the Industrial Accident Commission for entry of the appropriate award of compensation.

Viewing the evidence in its overall aspect, even in the light of the partial findings of the Commission that Mrs. Emerson asked Mr. Michaud to put up the ceiling and that Mr. Steeves did not personally agree with Mrs. Emerson to install it, I believe that the only reasonable ultimate conclusion inferable from it was that the plaintiff at the time of his accidental injury was an employee of the defendant corporation. His previous employment as a carpenter for Steeves continued into the ceiling work and the relation between them was not that of an independent contractor.

Where the evidence is without substantial conflict upon all indispensable subsidiary issues, its legal effect upon the ultimate determination whether a person is an employee or an independent contractor or whether the claimant was working for the employer *in any capacity* involves a question of law.

Where there exists no factual dispute and but one sensible, reasonable and consistent conclusion is inferable, whether it is reached by natural reasoning or the application of fixed rules of law, the question of the relationship of the parties is one of law. In re Dudley, 1969, Me., 256 A.2d 592; Kirk v. Yarmouth Lime Company, supra; *Murray's Case*, supra; Clark's Case, 1924, 124 Me. 47, 126 A. 18.

In the usual appeal from a decree of an Industrial Accident Commission, the Commissioner's findings of facts are final if they are supported by competent evidence and reasonable inferences which may be drawn therefrom. 39 M.R.S.A. § 99. We said in Matthews v. R. T. Allen & Sons, Inc., 1970, Me., 266 A.2d 240, 243 that "[t]his test is the equivalent of the 'clearly

erroneous' rule stated in M.R.C.P. Rules 52(a) and 53(e) (2)."

I realize that our Court did say in *Clark's Case*, supra, and in Gagnon's Case, 1925, 125 Me. 16, 130 A. 355, that "where the evidential facts are in dispute or where ordinary minds might ordinarily conclude oppositely from the same elemental premises, then the question is for the trier of facts." However, we explained in *Matthews*, supra, 266 A.2d at page 244, the undergirding rationale of this rule—that findings of fact will not be set aside if they are supported by competent evidence—to be the "appreciation of the truth that the fact finder who hears and sees the witnesses, who observes their hesitations, inflections and emphases, is in a more favorable position to judge their credibility than the appellate court which only reads the printed testimony." This Court indicated that the application of the rule respecting the finality of factual inferences was closely tied in with the problem which the trier of the facts has in weighing the evidence. In Mailman's Case, 1919, 118 Me. 172, 106 A. 606, this Court said:

"It is for the trier of facts, who sees and hears witnesses, to weigh their testimony and without appeal to determine their trustworthiness.

But the inferences which the commissioner draws from proved or admitted circumstances must needs be weighed and tested by this court. Otherwise it cannot determine whether the decree is based on evidence or conjecture."

In other words, where, as in the instant case, the facts are substantially undisputed and no judgment remains to be made on the credibility of the witnesses to reach the ultimate conclusion respecting the status of the claimant,—an employee of the defendant or an independent contractor—this Court is in an equally good position to draw the final conclusion. The resulting judgment does not depend in any degree upon the expertise which the Commission is recognized possessing.

The true test to determine the issue of employment as against independent contractorship is the power of control rather than the actual exercise of such power. It is true that many other factors might well have probative force on this issue, but the factor of the power to exercise control is determinative of the existence of the relationship of employer-employee.

In Murray's Case, supra, we indicated the forceful probative value which the power of an employer to terminate the employment of the claimant bore to the issue of employment itself:

" 'The power of an employer to terminate the employment at any time is incompatible with the full control of the work usually enjoyed by an independent contractor.' Bowen v. Gradison Construction Co., (Oct.1930) 236 Ky. 270, 32 S.W.(2d) 1014, 1017.

\*      \*      \*      \*      \*      \*

" 'By virtue of its power to discharge, the company could, at any moment, direct the minutest detail and method of the work. The fact \* \* \* that it did not do so is immaterial. It is the power of control, not the fact of control, that is the principal factor in distinguishing a servant from a contractor. Franklin Coal & Coke Co. v. Ind. Comm. (1921) 296 Ill. 329, 129 N.E. 811.' "

The right to terminate the relation or discharge the employee at will without liability is a most important point in determining and strongly tends to establish the relationship of employer-employee. Dobson's Case, 1925, 124 Me. 305, 128 A. 401.

The facts in the instant case closely resemble those in *Kirk*, supra. Michaud did not contract to do the carpentry work involved for a fixed price, nor did Kirk for hauling lime by truck. Michaud's pay was agreed upon at the rate of $3.50 per hour of work while Kirk was to receive $1.50 per cubic yard of lime hauled (Kirk had to absorb the cost of operation of his truck, regardless of mileage). Michaud, as well

as Kirk, carried on an independent business of hiring out to others on an independent contractor basis, both furnishing their own tools. Little or no supervision was involved in either case. When Michaud used assistants in work obtained from Steeves, he would keep a record of the time put in and submit to Steeves for payment the amount earned by them. Steeves would pay the helpers directly. As an added feature in the instant case, Michaud characterized himself as a self-employed person, taking care of his income tax and social security obligations to the federal government.

The fact withholding and security taxes were not deducted from payments made to the claimant and that the defendant Company did not include him as an employee on its payroll is not necessarily decisive in determining the relationship between the parties. C & H Transportation Company v. McLaughlin, 1967, Okl., 434 P.2d 229.

Petitioner's characterization of himself as a self-employed person is not conclusive against him. The intention of the parties as to the relationship created or existing, standing alone, is somewhat misleading. It is not determinative, except in so far as such belief in fact supports an assumption of control by the one and submission to control by the other. See, Restatement, Agency 2d, comment m., under section 220. Nelson v. Cities Service Oil Company, 1966, 259 Iowa 1209, 146 N.W.2d 261. As stated in *Kirk*, supra: "One might actually intend to enter into an independent contractual relationship and still the terms of the employment be such that the law would determine his status as that of an employee."

Mr. Steeves admitted that his Company furnished the ceiling strapping and ceiling tile. None of the materials used by Mr. Michaud in remodeling Mrs. Emerson's kitchen, whether in connection with the installation of the sink, the cupboards, the renovation of the walls or the strapping for the ceiling, was charged to Mr. Michaud. At the direction of the corporate defendant, he worked eight hours on each of the 9th and 10th of April in completing the remodeling of the kitchen which at that time involved the installation of the strapping to the ceiling, preparatory to the doing of the tile ceiling. Conceded that Mr. Steeves did not know the expansion of the Emerson remodeling job included the making of a new tile ceiling and that he did not personally agree with Mrs. Emerson to the same, as the Commission found, a fair inference from the undisputed evidence discloses that arrangements had been made between Mr. Michaud and Mr. Pelletier, defendant's manager of the hardware store who had apparent and actual authority in the matter. Mr. Steeves agreed that Mr. Pelletier would know more about the ceiling matter than he did. The Company paid Mr. Michaud for his labor in respect to the ceiling job for the full sixteen hours he had put in prior to the time of his injury. The Company's failure to complete the ceiling job after Mr. Michaud injured himself is of no significance.

The Commission seems to have been influenced in its conclusion by the fact that "Steeves had little or no control over Mr. Michaud with regard to the ceiling installation." Such deduction could only be made from the obvious absence of supervision of Mr. Michaud while he was working on the ceiling. The evidence, as viewed in its totality, would support a finding of no supervision by the Company over Mr. Michaud's work respecting all his work at the Emerson home. It is admitted that after Mr. Michaud was told what was wanted, he would perform the work according to his own ideas. He was a carpenter with many years of experience, his work had always been satisfactory to Steeves in the past and there existed no need for the exercise of control or supervision over his work on the Emerson project.

The fact that an employee must use his own judgment in the manner of performing his work does not necessarily make him an independent contractor. Every driver

of a vehicle must, in the nature of things, use his own judgment. Every carpenter must, of necessity, use his own judgment as to whether a particular piece of material is fit for the place where it has to be used. Every brick mason must determine and use some judgment as to whether the mortar furnished is of the right consistency and whether a particular brick is fit for the wall which he is laying.

Actual supervision is not a proper test of the nature of the relationship where the nature of one's duties or the character of the work may be such that no supervision is required. Thus the absence of any exercise of control or supervision in no way was indicative of the right of control.

Mr. Steeves testified without equivocation:

"Q. Now, if you didn't like the work that Leonce [Michaud] was doing, you would have fired him, I assume?

A. Yes, sure.

Q. And, you would also take him from one job to another, I mean, as he has testified? If Mrs. Emerson's job was held up because of supplies or something and you needed him at another house like Charles Jordan, it was all right to send him up there and do some work there?

A. Yes.

Q. And, this was the practice that while he was more or less not out on a private job so to speak you would use him in various places while you had him?

A. If he wasn't busy and we could use him, we would."

In re Dudley, supra, we said:

"[T]he vital test to prove the existence of the employer-employee relationship is whether or not the employer has retained the right to control. The right to control on the other hand is best established by the right in the employer, as in the instant case, to discharge the employee at will."

Furthermore, this Court said in *Clark's Case,* supra, that the method of payment by the job or by the hour or the day is not decisive but is indicative of the nature of the relationship. One must agree a person working by the hour is almost always subject to the direction of the person who employs him and may be discharged at any time. Stellwagen v. Industrial Commission, 1935, 359 Ill. 557, 195 N.E. 29.

Thus, the significant test is not actual control, direction or supervision, but the retention of the right to supervise, direct and control what shall be done and when and how it shall be done. The only reasonable implication to be gathered from Mr. Steeves' testimony is that he could dismiss Mr. Michaud at will, with or without cause. The power of an employer to terminate the employment at any time is incompatible with the full control of the work which is usually enjoyed by an independent contractor, and is the strongest circumstance tending to show the subserviency factor involved in the employer-employee relationship. Mr. Michaud was a trusted and able carpenter upon whom Steeves had relied over the years to fulfill its contractual obligations in the carpentry field in the course of its regular business of renovation and remodeling of kitchens and bathrooms. Although Steeves did not have to exercise supervision and control over the manner in which Mr. Michaud performed the work assigned to him, it retained at all times the right to supervise, control and discharge him.

I conclude as in *Kirk* and *Murray's Case,* supra, that the relationship between the defendant Steeves and the claimant Michaud at the time of the accident on the Emerson project was that of employer and employee as a matter of law. No contract existed between them for the performance of stated work for a stated price; the hiring was on the basis of an hourly rate; the

remodeling of the Emerson kitchen, including the putting in of a new tile ceiling, was part of the regular business of the employer as the hardware business had been carried on during the years; the claimant was at all times, including the time the accident occurred, subject to the employer's orders and instructions; the defendant Company had the right to discharge him at will without incurring liability for breach of contract. Notwithstanding Mr. Michaud's intention to carry on his work with Steeves as a self-employed person and the furnishing of his own tools on the job, we cannot escape the fact that Steeves had the right at any time to direct how and when the carpentry work was to be done, and to discharge Mr. Michaud at any time during the performance of his work. The evidence as a whole, even when delineated and modified by the partial findings of fact of the Commission, reasonably warrants a single conclusion as a matter of law, to wit, that, so far as the Emerson project was concerned, including the installation of the ceiling tile, Mr. Michaud was not working for himself but for the Company and in the performance of that work he was sufficiently under the control and direction of his employer to take him out of the category of independent contractor.