JEANNE ANDERSON v. NORTHWESTERN HOSPITAL
AND OTHERS.
POLK AND NORMAN COUNTIES SANATORIUM, ALSO
KNOWN AS SUNNYREST SANATORIUM,
AND ANOTHER, RELATORS.
CITY OF MINNEAPOLIS, BOARD OF PUBLIC WELFARE,
BETHESDA HOSPITAL, AND ANOTHER, RESPONDENTS.[1]

December 23, 1949.

No. 34,997.

*Reynolds & McLeod,* for relators.

*T. M. Hynes,* for respondent employe.

[1]Reported in 40 N. W. (2d) 442.

*John F. Bonner,* City Attorney, and *Carsten L. Jacobson,* Assistant City Attorney, for respondent Minneapolis General Hospital.

*C. A. Stark,* for respondent Bethesda Hospital.

*Shepley, Severson & Johnson,* for respondents Northwestern Hospital and Employers Mutual Liability Insurance Company, insurer.

THOMAS GALLAGHER, JUSTICE.

Certiorari to review a decision of the industrial commission awarding employe compensation against relator Polk and Norman Counties Sanatorium, also known as Sunnyrest Sanatorium, and its insurer.

Employe, Jeanne Anderson, enrolled for nurses training at Northwestern Hospital, Minneapolis, under what is designated as the United States Cadet Nurses Corps, sponsored by the United States government under 50 USCA Appendix, §§ 1451 to 1462.

This act, known as the Bolton Act, has for its purpose the training of a corps of nurses in the United States who will be available in case of emergencies and who may be used in the army, navy, veterans' hospitals, or other public institutions. Under the program, the trainee selects from an eligible list a hospital and enrolls therein for her training. Thereafter, the hospital selected supervises the entire course of training, which takes three years. In connection therewith, it may assign the trainee to other hospitals for specialized training during the course.

While engaged in the work, the trainee receives from the hospital in which she is enrolled or to which she has been assigned certain monthly payments, for which such hospital is reimbursed by the federal government. These amount to $15 per month during the first 9 months, $20 per month for the following 15 to 21 months, and $30 per month thereafter until graduation. If the trainee is transferred by the enrolling hospital to some other hospital, her compensation is paid by the hospital to which she is then assigned. In addition, the trainee receives from the hospital to which she is assigned by the enrolling hospital room and board during the period she is employed at the former.

Employe began her training at Northwestern Hospital September 9, 1943. The first six months thereof were theoretical. She was then placed on floor duty and performed general nursing care until June 25, 1945, at which time she was sent by Northwestern to the University Hospital for training in pediatrics. She was at the latter institution from June 25, 1945, to September 25, 1945. From September 25, 1945, to November 1945, she was returned to Northwestern for further training. Thereafter she was sent by Northwestern Hospital to Minneapolis General Hospital, where she was engaged in the contagious diseases and tuberculosis section of that hospital until about December 25, 1945. The latter hospital is operated by the city of Minneapolis, one of the respondents herein.

On or about December 25, 1945, she again returned to Northwestern Hospital, where she remained until March 1, 1946, with the exception of three weeks' vacation allotted her. On March 4, 1946, she commenced the last six months of her training and selected as her specialty rural nursing service. For this, she was sent by Northwestern Hospital to Bethesda Hospital at Crookston, one of the respondents herein. On March 11, 1946, she was sent by Bethesda Hospital to Sunnyrest Hospital, also known as Polk and Norman Counties Sanatorium, a tuberculosis sanatorium operated by said counties, one of the relators here.

At the time she was sent to Bethesda Hospital by Northwestern Hospital, she did not realize that there would be any affiliation with a tuberculosis institution. She had previously received a Mantoux test indicating dormant tuberculosis. On April 1, 1946, she returned to Bethesda Hospital from Sunnyrest, and remained at Bethesda until June 2, 1946, at which time she was returned to Northwestern. On August 8, 1946, she became ill and was hospitalized in the latter hospital. She was paid the sum of $30 per month while at Bethesda and Sunnyrest Hospitals, both of such sums being paid by Bethesda, although Bethesda was actually reimbursed by Sunnyrest. She was furnished board and room at each of the hospitals at which she was in training.

Employe testified that during her first period of training at Northwestern from September 9, 1943, until June 25, 1945, she had no knowledge of any patients being afflicted with tuberculosis, and that the same situation applied when she was at the University Hospital from June 25, 1945, to September 25, 1945. She further testified that from September 25, 1945, until November 1945, at Northwestern Hospital, she had no known exposure to tuberculosis.

From November 1945, to December 25, 1945, in Minneapolis General Hospital she took training in the tuberculosis section, gave general nursing care to patients afflicted therewith, and was brought in close proximity with them. At Bethesda, where she was from March 4, 1946, to March 11, 1946, and from April 1, 1946, to June 2, 1946, she testified that she had direct contact with three persons or patients afflicted with tuberculosis. Her testimony in this respect is disputed by the supervisor of Bethesda, who stated that only one tubercular patient was at Bethesda during this period. At Sunnyrest, from March 11, 1946, to April 1, 1946, she had the general care of tuberculosis patients. From June 1, 1946, to the date of her disability on August 8, 1946, while in training at Northwestern Hospital, there was no known exposure to tuberculosis patients.

Employe testified that she first noticed loss of weight in March 1946, followed by fatigue and further loss of weight, which continued until the date of her disability on August 8, 1946. While at Bethesda and before going to Sunnyrest, she gave herself a tuberculin test, which was positive. The first positive X ray showing disease in the lung was in August 1946.

As previously stated, at the time employe was sent to Bethesda she had no knowledge that she would be required to have any affiliation with a tuberculosis sanatorium, and made no application therefor to Bethesda. When she found she was to be sent to Sunnyrest, she asked the supervisor of student nurses at Bethesda not to send her there, as she did not wish tuberculosis training. She then stated that she had a positive Mantoux test and should not be further exposed, but she was advised by the supervisor that she had no choice in the matter and would have to go to Sunnyrest.

Expert testimony was introduced as to where employe might have contracted the disease through exposure. Dr. Dorothy Hutchinson, a specialist in tuberculosis, testified that in her opinion exposure took place at Minneapolis General Hospital in November and December 1945, and that exposure at Sunnyrest was not a factor in the development of the disease. Dr. Sumner S. Cohen expressed the opinion that employe had developed tuberculosis at Minneapolis General Hospital, and that she had the disease when she went to Sunnyrest. Dr. R. E. Johnson stated that in his opinion employe had contracted the infection at least three weeks before her positive tuberculin reaction on March 7, 1946. Dr. J. A. Myers testified that in his opinion there was a possibility that the infection may have occurred at Minneapolis General Hospital from exposure therein during November and December 1945. Both Dr. Myers and Dr. Johnson testified that there is more danger of infection by contact with an *unknown* source than there is through a patient known to be afflicted with the disease.

The commission found that on and prior to April 1, 1946, employe was in the employ of Polk and Norman Counties Sanatorium, also known as Sunnyrest, in an employment to the nature of which the disease was due and in which it was contracted, and that hence Sunnyrest and its insurer were liable for the compensation benefits awarded.

On appeal, it is the contention of relators that (1) employe was not an employe of Sunnyrest, but was actually an employe of Northwestern Hospital, which assigned her to Sunnyrest without her election or consent pursuant to its training course, and that Northwestern Hospital, as such employer, was solely liable for the compensation benefits awarded; (2) that, even if Sunnyrest could be regarded as her employer, it could not be held liable for her compensation benefits in view of the uncontroverted testimony that she was afflicted with tuberculosis before she went to that hospital for training; and (3) that, since she had acquired the disease before training in Sunnyrest and since Bethesda Hospital was the last hospital which employed her in work in which she was subjected to

actual known contacts with tuberculosis patients, the award should have been against Bethesda.

Respondents other than Northwestern Hospital, filing separate briefs herein, contend in the main that employe was not an employe of any of such respondents; that she was under full control and supervision of Northwestern Hospital at all times; and that accordingly Northwestern Hospital should be regarded as her employer. In particular, they attack finding No. 3 of the commission, which implies further proceedings by Sunnyrest for apportionment of the compensation among all respondents who were determined by the commission to be employers pursuant to M. S. A. 176.66, subd. 5.

Respondent Northwestern Hospital contends that employe ceased to be its employe during the periods in which she was assigned to other hospitals for training and from which she received board and room as part of her compensation; that the commission's finding on the place of exposure is sufficiently supported by the evidence so as not to be disturbed here; and, finally, proof of exposure at Northwestern Hospital being entirely absent, that it could not be held liable under § 176.66, subd. 5, which indicates that exposure to the disease must be established.

■ This court has just held that a student nurse under 50 USCA Appendix, §§ 1451 to 1462, is an employe of the institution in which she enrolls for the course of training provided for therein, even though during a part of the time required therefor she may be assigned by the enrolling institution to other hospitals for specialized training. See, Otten v. University Hospitals, 229 Minn. 488, 40 N. W. (2d) 81.

Under this ruling, it follows that Northwestern Hospital, one of the respondents here and the institution in which the employe enrolled for her course, was her employer from the date of such enrollment until the time of her disability.

■ The fact that during a portion of such training employe was paid by Bethesda Hospital, while of importance, would not be the sole controlling factor. Notwithstanding such compensation, it is clear that while at Bethesda she still remained subject to the control

of Northwestern Hospital, which was still supervising her training, which might at any time withdraw her from Bethesda and reassign her to other institutions, and which in many other ways still controlled her employment. See, O'Rourke v. Percy Vittum Co. 166 Minn. 251, 207 N. W. 636.

Based upon the rule laid down in the Otten case, it follows that the award against Bethesda Hospital must be set aside and the case remanded with directions to award compensation in favor of employe against Northwestern Hospital for the compensation to which she may be entitled.

Our opinion in this respect makes it immaterial as to which institution caused employe's exposure to the disease. It is undisputed that several times during the course of her employment she was exposed thereto in institutions to which she had been assigned by Northwestern, the enrolling hospital. Such evidence would be sufficient to comply with § 176.66, subd. 5, if proof of specific exposure must be established, which we do not determine here.

Award set aside and case remanded for new award in accordance with opinion.