## JANET KRAUSE v. TRUSTEES OF HAMLINE UNIVERSITY OF MINNESOTA AND OTHERS.[1]

January 14, 1955.

No. 36,402.

---

[1]Reported in 68 N. W. (2d) 124.

*John M. Prins,* for relators.

*James Pomush,* for respondent Janet Krause.

*Mahoney & Mahoney,* for respondents A. M. Calvin, Receiver N. W. Baptist Hospital Association operating Mounds Park Hospital and Midway Hospital, and Indemnity Insurance Company of North America.

*C. A. Stark,* for respondents Asbury Methodist Hospital and American Casualty Company.

*Robert E. O'Connell,* Assistant Corporation Counsel, for respondent Ancker Hospital, City of St. Paul.

*Charles A. Sawyer,* City Attorney, for respondent Minneapolis General Hospital, City of Minneapolis.

*Harold Bjornstad,* for respondent Department of Social Security, State of Minnesota.

DELL, CHIEF JUSTICE.

Certiorari to review a decision of the industrial commission awarding employee compensation against relators, Hamline University of Minnesota and its insurer.

The facts in this case are generally undisputed, and extensive review of the evidence is unnecessary. Janet Krause, hereinafter referred to as the employee, after making inquiries at Hamline University concerning their school of nursing, registered at the school in June 1949. For a period of 12 weeks she lived on the campus, attending lecture classes and doing laboratory work. She paid for her tuition, board, and room. In order to give practical training to its nursing students, the university entered into agree-

ments of affiliation with Ancker Hospital, Minneapolis General Hospital, Mounds Park Hospital, Midway Hospital, and Asbury Methodist Hospital. In accordance with this arrangement the employee, in September 1949, was directed to report to Asbury Hospital for clinical experience. While there she performed certain nursing services for hospital patients and was furnished board, room, and laundry. In February 1951 she rendered services to a patient suffering from advanced tuberculosis. Because the patient's condition was not immediately recognized, the employee was not advised to take the customary precautions, such as wearing a mask or gloves. Shortly after this contact, employee went on vacation, and upon her return in March 1951, she entered the Minneapolis General Hospital for training in pediatrics. Subsequently she was assigned to the Mounds Park Hospital and Ancker Hospital for other types of training. While at Ancker she was hospitalized as a patient for tuberculosis.

The dean of the Hamline School of Nursing was responsible for the curriculum and supervised Hamline faculty members at the various hospitals. The details of the services performed by the employee were generally supervised by nurses and supervisors of the particular hospital. General control over the student nurses, such as reassignment to the various hospitals and satisfying itself that compliance with the curriculum was attained, was maintained by the university.

On July 8, 1952, employee filed a claim for compensation benefits with the industrial commission. The case was heard before a referee who made findings of fact and determined that Hamline University, Asbury Hospital, and their insurers were jointly liable to the employee for compensation and medical and hospital expenses. He dismissed the claim petition against the other hospitals. The employee appealed from the decision of the referee on the issue of the basic wage she was receiving at the time of her injury. Asbury Hospital, Hamline University, and their insurers cross-appealed from the liability imposed upon them. By a divided decision the industrial commission, approving certain findings of the referee and vacating others, determined that the employee was in the sole employ of

Hamline University at a wage of $30 per week at the time she contracted tuberculosis and dismissed the claim petition as to all other parties. Hamline University and its insurer then petitioned for and obtained a writ of certiorari for the purpose of reviewing the decision of the industrial commission.

■ The relationship of employer and employee is, of course, the essential basis of recovery under our workmen's compensation law.[2] It is well settled that student nurses who perform services and are furnished board and room are employees within the meaning of the act.[3] Here the parties concede that the employee is entitled to compensation benefits. The question with which we are concerned is: who is the employer and, if there is more than one, to what extent, if any, the compensation should be apportioned among them?[4] In reaching its determination that the relator Hamline University was the sole employer, the commission relied in the main on our decisions in Otten v. University Hospitals, 229 Minn. 488, 40 N. W. (2d) 81, and Anderson v. Northwestern Hospital, 229 Minn. 546, 40 N. W. (2d) 442. In the Otten case the employee was a student nurse enrolled at the University of Minnesota as a member of the United States Cadet Nurses Corps.[5] Under this program she received from the university a cash stipend in addition to her tuition, fees, and uniforms. Various hospitals where she received practical training provided her with board, room, and laundry. She contracted clinical tuberculosis while serving at one of the hospital affiliates, and it was held that, for the purpose of liability under workmen's compensa-

---

[2]Jackson v. Cathcart & Maxfield, Inc. 201 Minn. 526, 277 N. W. 22.

[3]Judd v. Sanatorium Comm. 227 Minn. 303, 35 N. W. (2d) 430; Matter of Bernstein v. Beth Israel Hospital, 236 N. Y. 268, 140 N. E. 694, 30 A. L. R. 598 (intern); Employers Mut. Lia. Ins. Co. v. Industrial Comm. 235 Wis. 270, 292 N. W. 878.

[4]M. S. A. 176.66, subd. 5, provides in part that where there are several employers total compensation for an occupational disease is recoverable from the last employer with the right of apportionment in certain cases against the prior employers.

[5]The act authorizing grants for this purpose, 50 USCA Appendix, §§ 1451 to 1462, terminated upon cessation of hostilities of World War II, December 31, 1946.

tion, the university was the sole employer. Shortly thereafter, in the Anderson case, we reached a similar result where the enrolling institution was the Northwestern Hospital. In that case the hospital affiliate paid the monthly stipend in addition to providing room and board during the period that the employee was assigned there for practical training. We have thoroughly re-examined the rationale behind these cases and can find no compelling reason for upsetting the decisions there reached. However, the facts in the instant case vary sufficiently to warrant discussion of some of the arguments presented by the relator.

As we pointed out in the Otten case, the statutory definition of employer[6] is of such a general nature that it is necessary to consider the various factors customarily deemed characteristic of the employer-employee relationship. Although these factors are numerous,[7] we are here concerned with but two of the primary ones; namely, who exercises control over the employee, including the right to discharge and replace, and who is paying the employee's compensation.

■ Undoubtedly the most important single factor in determining whether an employer-employee relationship exists is that of the right to control.[8] In the Otten case we unequivocally announced the principle that, as far as liability under the workmen's compensation law is concerned, the relationship is not terminated unless complete control is surrendered.[9] It was on this basis that we dis-

[6]M. S. A. 176.011, subd. 10, provides: " 'Employer' means any person who employs another to perform a service for hire; and includes corporation, partnership, association, group of persons, state, county, village, borough, town, city, school district, or governmental subdivision."

[7]For an enumeration of the various factors that may be considered, see Otten v. University Hospitals, 229 Minn. 488, 493, 40 N. W. (2d) 81, 85.

[8]See, Nesseth v. Skelly Oil Co. 176 Minn. 373, 374, 223 N. W. 608.

[9]See, O'Rourke v. Percy Vittum Co. 166 Minn. 251, 207 N. W. 636. Completely different considerations apply in the so-called loaned-servant problem under vicarious tort liability, and these cases must be distinguished. The responsibility for a servant's negligence in such cases is generally said to rest with the employer having the right to detailed authoritative control over the manner in which the work is to be done. St. Paul-Mercury Ind.

tinguished the Otten case from Judd v. Sanatorium Comm. 227 Minn. 303, 35 N. W. (2d) 430. In the Judd case the university had relinquished complete control over the student nurse and consequently terminated the employment relationship. We fail to see any significant difference between the control retained by Hamline in this case and that by the enrolling institutions in the Otten and Anderson cases. Hamline University had the right to terminate or otherwise affect the employee's status in the school of nursing; its faculty members were located at the various hospitals; the dean of the school of nursing visited and supervised the affiliates; and Hamline exercised the right of reassignment. Relators argue that this is not the type of control characteristic of an employer-employee relationship and seek to distinguish the Otten and Anderson cases on the ground that in both those cases the employer operated and maintained a hospital. In the Otten case the employee spent her first three months at the university in academic study and was then assigned to an affiliate hospital for practical training. Similarly, in the Anderson case six months were spent in academic training at Northwestern Hospital before the employee began general nursing care. These institutions, although they maintained hospitals, were also schools of learning and we can see no discernible difference in the type of control exercised over the employee when undergoing practical training at the subsidiary hospitals. In any event, the question of the right to control is a factual one and we need not inquire any further than whether there is evidence reasonably sustaining the commission's findings in this regard.[10] There is ample evidence in the record before us to support the conclusion that relator retained and effectively exercised control over the employee.

■ Unlike the Otten and Anderson cases, the enrolling institution here at no time directly paid the employee any compensation. In this regard the facts in the present case more closely resemble those in the Judd case, where we noted that the employee received her

Co. v. St. Joseph's Hospital, 212 Minn. 558, 4 N. W. (2d) 637; see, 36 Minn. L. Rev. 290.

[10]Chillstrom v. Trojan Seed Co. 242 Minn. 471, 479, 65 N. W. (2d) 888, 894; 6 Dunnell, Dig. & Supp. § 10426, note 24.

compensation from the Sanatorium Commission rather than the enrolling institution, the University of Minnesota.[11] By whom the employee's wages are paid has been considered an important factor in determining who is the employer.[12] Prior to 1953 our statute provided:

"The term 'employer' means every person who employs another to perform a service for hire and *to whom the 'employer' directly pays wages,* * * *." (Italics supplied.)[13]

But that who paid the compensation was not the controlling factor even under this statutory provision is illustrated by the Anderson case in which this court said:

"The fact that during a portion of such training employe was paid by Bethesda Hospital, while of importance, would not be the sole controlling factor. Notwithstanding such compensation, it is clear that while at Bethesda she still remained subject to the control of Northwestern Hospital, which was still supervising her training, which might at any time withdraw her from Bethesda and reassign her to other institutions, and which in many other ways still controlled her employment."[14]

In light of this language it is clear that who directly pays the wages no longer has the significance that once was attributed to it as a factor in determining who is the employer.

In 1953 the legislature, in repealing M. S. A. 1949, § 176.01, and enacting what is now M. S. A. 176.011, omitted the phrase "and to whom the employer directly pays wages" from the workmen's compensation law.[15] The interim commission which recommended the change stated as one of its reasons for omitting the phrase that the

[11]Judd v. Sanatorium Comm. 227 Minn. 303, 312, 35 N. W. (2d) 430, 436.

[12]*E.g.,* see State ex rel. D. M. Gilmore Co. v. District Court, 147 Minn. 12, 179 N. W. 216.

[13]M. S. A. 1949, § 176.01, subd. 5, repealed by L. 1953, c. 755, § 83.

[14]Anderson v. Northwestern Hospital, 229 Minn. 546, 551, 40 N. W. (2d) 442, 445.

[15]L. 1953, c. 755, § 1, subd. 10.

clause was "unnecessarily restrictive."[16] This statutory change in the definition of "employer," although made subsequent to the date the disease was contracted in the instant case, is further indication of the trend reducing the importance of this factor.

■ We have repeatedly held that the relationship of employer and employee, even for the purposes of the workmen's compensation act, rests on contract, either express or implied.[17] When the employee here applied for enrollment at Hamline University, it was understood between the employee and the university that a portion of the employee's studies would involve practical training, during which period she would receive compensation in the form of board and room and she, in turn, would render services. The negotiations for this contractual relationship were carried on between the employee and the university and not with the hospitals. The agreement was consummated when the employee paid her fees and was enrolled by the university. Under the terms of this agreement she began her employment when she had completed a prescribed period of academic study, at which time she was assigned to the various hospitals selected by the university for practical training. While the direct benefits of the employee's services were received by the hospital affiliates, it is obvious that the benefits, at least indirectly, ran to the enrolling institution, since the arrangement was an integral and necessary part of the training program without which the school of nursing could not profitably exist. As we have already pointed out, the evidence supports the finding that the university retained control over the employee from the time the employment relationship

[16]Report of the Interim Commission on Workmen's Compensation, 1953, p. 61: "It is proposed to strike the words 'and to whom the employer directly pays wages'. It is believed that this clause is redundant, unnecessarily restrictive and in conflict with a proposed amendment of the term wages."

[17]E.g., Yoselowitz v. Peoples Bakery, Inc. 201 Minn. 600, 277 N. W. 221; Tschida v. Bratt, 179 Minn. 277, 228 N. W. 935. But, see Riesenfeld and Maxwell, Modern Social Legislation, p. 174, where the author points out that under the modern view the idea of status rather than a consensual employment relationship is the basis of compensation.

began. Moreover, there is no evidence indicating that the employee treated, or that any reasonable person would treat, each different assignment as creating a new employment relationship and terminating the prior one.[18] Notwithstanding the fact that payment of compensation was directly made by the hospital affiliate, the commission, under these circumstances, was entirely justified in concluding that Hamline University was the employer and that the relationship was not terminated by assignment of the employee to the various hospital affiliates.

The other arguments urged by the relator have been resolved against them by our decisions in the Otten and Anderson cases. In view of our conclusion that the hospital affiliates were not the claimant's employers, it becomes unnecessary for us to determine the applicability of the apportionment statute to the disease of tuberculosis.

It is unfortunate and disturbing to note that here, and in similar cases coming before us, payment of compensation to the employee has been delayed for long periods of time because of extensive litigation. One of the primary motivating reasons for the enactment of the workmen's compensation law was to provide adequate and prompt relief to the injured employee.[19] While each case depends upon its own facts, the conclusion we have reached here, as well as in our previous decisions involving similar factual situations, should leave no doubt that in this type of case liability may properly be imposed upon the enrolling institution and its insurance carrier unless all the significant factors of the employer-employee relationship, including that of complete control, are transferred to the affiliate hospital. Not only is this conclusion compelled by our previous decisions but, we feel, it reflects the spirit, intent, and underlying policy considerations of our workmen's compensation law.

Affirmed.

---

[18]See, Pocrnich v. Snyder Min. Co. 233 Minn. 81, 45 N. W. (2d) 794; Yoselowitz v. Peoples Bakery, Inc. 201 Minn. 600, 277 N. W. 221; and Dahl v. Wunderlich, 194 Minn. 35, 259 N. W. 399, to the effect that express or implied consent is essential to the creation of a new employment relationship.

[19]See, Riesenfeld and Maxwell, Modern Social Legislation, pp. 137 to 138.