## Payment to Employes in Training

THOMAS D. MCBRIDE, Attorney General, STEPHEN B. NARIN and EDWARD FRIEDMAN, Deputy Attorneys General, March 14, 1957.—You have requested this department to advise you if payment should be made to the employes specified in voucher transmittal no. V. T. 12, dated February 5, 1957, for services performed during those periods of their employment during which they are being trained in educational institutions pursuant to the research and training program established by the Department of Welfare.

These employes are all employed by the Commonwealth on a full time basis. Each was originally em-

ployed for a fixed term during a part of which he is obligated to undergo training to better qualify him to perform service for the Commonwealth. He is also required to render additional services to the Commonwealth during the period of his training as well as thereafter. The term of employment is approximately twice the length of the period during which the employe received the aforesaid training. At the time of their original employment the Department of Welfare required each of these employes to enter into a written agreement prepared by the Department of Welfare. The form of this agreement was incomplete and did not accurately reflect the terms of the employment in the following particulars: It did not correctly define the terms of the employment nor bind the employes to continue in the employment of the Department during the entire term; it did not make clear that the training was incidental to a part of the employment; it did not define the duties of the employe to render continuous service to the Commonwealth during periods of the year when he is not receiving training in an educational institution; and it imposed a penalty upon the employe equal to all salary paid to him and expenses incurred in connection with his training for breach of the agreement, which penalty was inconsistent with his status as an employe. When this agreement came to the attention of the Department of Justice, it was completely revised in the form of a confirmatory letter to conform the written agreement to the actual agreement of the parties and to law.

The training of these employes consists of graduate work in the following fields: Clinical psychology, nursing education, occupational therapy, rehabilitation, social work or the teaching of retarded children. The periods during which training is required range from one to four years and the periods of obligated employment consequently range from two to eight years, in-

cluding the period of training. During the period of training, all required clinical practice and field work must be performed primarily in Department of Welfare institutions and secondarily in State-aided institutions. During those periods of the year when the institution in which he is receiving academic instruction is not in session, the employe is assigned to a departmental institution.

The agreements provide that the employes shall pay all expenses in connection with their training except for tuition, which will be paid by the Commonwealth. They further set forth reduced salary schedules until the employe has completed the required training, and thereafter salaries equal to the then current salary schedule of the Department for employes with comparable skill, experience and service. During the period of training it is specifically provided as a condition of employment that an academic standing be maintained satisfactory to the proper authorities of the educational institution at which the training is being received.

The program under which these persons are employed is necessitated by an acute shortage of trained professional and technical personnel in Commonwealth institutions that can only be alleviated by this type of an on-the-job training program. There is no question that the Department of Welfare carries a great public responsibility and performs vital functions in the operation of our government. It is just as necessary for the Department of Welfare to train employes as it is for the Pennsylvania State Police or any other department of the State government. The fact that particular individuals receive educational training as a part of this program is incidental to the primary purpose of the department to recruit and train qualified professional and technical personnel. These individuals are not being paid to go to school. They are

employed for specific types of jobs and are sent to educational institutions in order to train them to perform their present duties more efficiently, and also to perform additional duties. They remain Commonwealth employes while in attendance at these educational institutions. See Otten v. University Hospitals, 229 Minn. 488, 40 N. W. 2d 81; Krause v. Trustees of Hamline University, 243 Minn. 416, 68 N. W. 2d 124; Carraway Methodist Hospital v. Pitt, 256 Ala. 665, 57 So. 2d 96; Sbarbaro v. United States, 112 F. Supp. 93 (E. D. Pa. 1953); Bellview v. United States, 122 F. Supp. 97 (D. Vt. 1954). The Commonwealth could even go so far as to establish its own school for the training of such employes, if deemed necessary.

We have been informed that a similar program has been in effect in the Department of Welfare on a smaller scale since 1943, and other departments, such as the State Police and the Department of Public Assistance, do presently and have at various times in the past conducted personnel training programs on both individual and group bases.

The General Appropriation Act of the Department of Welfare for the 1955-57 biennium, Act No. 146-A, approved by the Governor on June 1, 1956, appropriates $143,550,000 to the Department of Welfare for the various purposes set forth in the act, including "for research and training in existing State-owned and State-aided institutions under the regulations of the department". There is set aside in the department's budget for the 1955-57 biennium $500,000 for such research and training.

There is no legal prohibition against the expenditure of State funds for this purpose as set forth in the appropriation. The employment comprehended by the aforesaid agreements clearly falls within its terms.

The only possible legal objection to the appropriation is article III, sec. 18, of the Constitution of Pennsylvania which provides that:

"No appropriations shall be made for charitable, educational or benevolent purposes to any person or community nor to any denominational and sectarian institution, corporation or association: . . ."

This constitutional provision has no application to the question under consideration and does not impair or affect the validity of the aforesaid appropriation and agreements entered into pursuant thereto. This appropriation is not an appropriation to any person for educational purposes, but is, rather, an appropriation to the Department of Welfare for the proper purposes and functions of the department.

In Loomis v. Philadelphia School District Board of Education, 376 Pa. 428 (1954), the Supreme Court of Pennsylvania held that a statute authorizing the Commonwealth to grant annual military leaves of absence without loss of pay, time or efficiency to employes in reserve components of the armed forces did not provide for a gratuity and did not violate article III, sec. 18, because such training contributes to their efficiency as public employes and the taxpayers thus benefit therefrom. Similarly, the training received by these employes contributes to their efficiency as public employes, and the taxpayers benefit both directly in the improvement of each individual's service and indirectly in the improvement of the over-all operation and program of the Department of Welfare.

It is, therefore, the opinion of this department, and you are accordingly advised, that the above appropriation is a constitutional exercise of legislative authority and the employment and training program adopted by the Department of Welfare as herein described is a proper and legal implementation of said appropriation act. You are further advised that sal-

ary payments may properly be made to each of the employes specified in voucher transmittal no. V. T. 12, dated February 5, 1957, upon certification by the Department of Welfare that such employe has executed the revised agreement.