Calvin **FINCH**, Appellant,

v.

Sharon **WEMLINGER**, Acting Director of the Minnesota Governor's Manpower Office, et al., Respondents.

No. 51196.

Supreme Court of Minnesota.

Sept. 11, 1981.

Warren Spannaus, Atty. Gen., Jane Prohaska and William Donohue, Sp. Asst. Attys. Gen., St. Paul, for respondents.

WAHL, Justice.

Plaintiff Calvin Finch appeals from an order of the Ramsey County District Court, dated March 21, 1980, insofar as it dismissed his cause of action for unfair labor practices under the Public Employees' Labor Relations Act (PELRA), Minn.Stat. §§ 179.61 to 179.76 (1980), and held that the standard of conduct by which qualified immunity is measured would be determined by state law in a trial of his cause of action under 42 U.S.C. § 1983 (1980), the Civil Rights Act. We affirm the dismissal of the cause of action under PELRA and remand with instructions.

Calvin Finch was an unclassified state employee serving as a director of a division of the Governor's Manpower Office (GMO) at the time of the incident which gave rise to this lawsuit. The GMO at that time was a part of the Governor's Office. In his capacity as director of the Balance of State Prime Sponsor Division, Finch supervised 150 employees and administered federal funds under the Comprehensive Employment and Training Act (CETA) of some $20 million. He became concerned that the hiring practices in the GMO were politically motivated and claims that he was ordered by his superior to hire two persons who were not qualified and to retain and give a raise to a probationary employee whose termination he had recommended. Because he believed that the apparent political patronage endangered the federal funding of the project, he protested to his supervisor, defendant Sharon Wemlinger, and to defendant Michael O'Donnell, the incoming head of the Department of Economic Security (DES).[1] In addition, Finch contacted four state senators whose committee assign-

Broeker, Hartfeldt, Hedges & Grant and Steven R. Hedges, Minneapolis, for appellant.

1. The GMO was absorbed into the DES in November 1977, pursuant to legislation passed in the 1977 Session of the Minnesota Legislature consolidating several state agencies.

ments related to the DES and informed them of what he considered to be harmful employment practices and the coercion to which he felt he was being subjected. He also contacted a reporter for the Minneapolis Star. The next day he was fired, allegedly as a consequence of these communications.

Finch brought a suit for damages, alleging four causes of action: (1) that his employee rights, guaranteed by PELRA, Minn. Stat. § 179.61–.76, had been violated; (2) that his rights to free expression, guaranteed under Minn.Const. art. 1, § 3, and U.S.Const. amend. 1 had been violated; (3) that the acts of the state violated CETA-authorized legislation, and (4) that the acts of the state constituted a denial of his civil rights under color of state law protected by 42 U.S.C. § 1983 (1980).

The trial court found no cause of action under PELRA and dismissed the first claim; permitted amendment of the complaint on count 2, the constitutional free expression cause of action; dismissed the third cause of action under the federal statute authorizing CETA; and dismissed the fourth cause of action as to the State of Minnesota. The court's order permitted Finch to pursue his section 1983 claims against Wemlinger and O'Donnell individually but ordered that in the trial of the case state law with regard to the standard of immunity of public officials should be applied.

The appeal raises two issues: first, whether the dismissal of this non-union, unclassified public civil service employee constituted an unfair labor practice under Minn.Stat. § 179.68 (1980), and second, whether in an action in state court against a public official under 42 U.S.C. § 1983 (1980) the state, rather than the federal standard of immunity applies.

■ The appellant argues that he is a public employee, as defined by Minn.Stat. § 179.63, that he was fired for the exercise of rights guaranteed under section 179.65, that the firing constitutes an unfair practice, as defined by section 179.68, and that under the statute he has a cause of action

against respondents. We agree that appellant is a public employee for purposes of PELRA. The definitional section of PELRA, section 179.63, subd. 7, defines public employee quite broadly. Appellant clearly falls within the description of "any person appointed or employed by a public employer" and fits into no excluded category. We conclude, however, that he has no claim under that act. Appellant contends that section 179.65, subd. 1, has given him a right which the state has violated. The first sentence of that subdivision states as follows:

Nothing contained in sections 179.61 to 179.76 shall be construed to limit, impair or affect the right of any public employee or his representative to the expression or communication of a view, grievance, complaint or opinion on any matter related to the conditions or compensation of public employment or their betterment * * *.

We do not read this section as conferring any additional right on public employees but rather as a taking note of the existence of rights outside the PELRA which the legislature in no way intended to limit by the creation of new rights in the Act.

■ If appellant, as an unclassified, non-union employee who could be dismissed from his position at any time without reason, has any rights under section 179.65, it is under the second sentence of subd. 1, which guarantees that "any public employee individually, or group of employees through their representative, shall have the right of expression or communication of a view, grievance, complaint or opinion on any matter related to the conditions or compensation of public employment or their betterment, by meeting with their public employer or his representative * * *." Appellant, however, does not base his claim under PELRA on this right and did, in fact, meet with his employers to communicate his complaints and opinions.

■ The only other case in which we have dealt with this provision is *Ekstedt v. Village of New Hope*, 292 Minn. 152, 193 N.W.2d 821 (1972). There we interpreted

Minn.Stat. § 179.52 (1969), the predecessor to Minn.Stat. § 179.65, subd. 1, to mean that a public employee may not be terminated for submitting a grievance. Because we characterized the resolutions made by the plaintiff policemen in *Ekstedt* as grievances, we held that those policemen could not lawfully be terminated. Appellant in the case at bar does not argue that the complaints he allegedly made to his supervisor were grievances. He alleges only that he is constitutionally entitled to express himself and that Minn.Stat. § 179.65, subd. 1, gives him a statutory right of action.[2] We hold that the statute confers no such right of action. Appellant's constitutional claim has been retained for consideration by the district court. The trial court is affirmed on this issue.

The second issue raised concerns appellant's challenge to that portion of the trial court's order which provides that the state standard of immunity shall be applied to the conduct of public officials in the trial of the section 1983 cause of action. For the guidance of the parties at trial and in the interest of judicial economy, we will consider the issue.

The relevant portion of the trial court's order reads as follows:

> To the extent that these individually named defendants [in plaintiff's cause of action under 42 U.S.C. § 1983] are entitled to take advantage of the doctrine of

discretionary immunity for state officials, plaintiff must prove as an element of his case that the named defendants acted maliciously or willfully in denying him his constitutional rights. While it is true that the states cannot clothe their officials with absolute immunity as to discretionary acts in derogation of rights under the federal constitution, the standard of conduct by which qualified immunity is measured may be determined in a state court action by established state law. In Minnesota, as set out in *Papenhausen v. Schoen*, 268 N.W.2d 565 ([Minn.] 1978), the plaintiff must prove as an element of his case that the defendants acted maliciously and willfully.

Appellant contends that in an action in state court against a public official under 42 U.S.C. § 1983, the federal doctrine of "qualified immunity" controls, as opposed to the state doctrine of "discretionary immunity."

The state argues that neither this court nor the United States Supreme Court has explicitly addressed the issue of the scope of immunity available to a state official when sued in state court under 42 U.S.C. § 1983 and that, where a litigant chooses to pursue his claims in a state court, he is bound by the law of that state.[3]

The state does not question the power of state courts to decide federal constitutional and statutory claims so long as neither the constitution nor the statute with-

---

**2.** The PELRA language relied on by appellant is similar to that contained in the Bill of Rights of Members of Labor Organizations guaranteeing members of labor organizations the right "to express any views, arguments or opinions * *." 29 U.S.C. § 411(a)(1) (1978). Courts have interpreted this federal labor law to provide protection of individual rights of union members vis-a-vis the union. *Bradley v. Local 119, Int'l Union of Elec., Radio & Mach. Workers*, 236 F.Supp. 724 (D.Pa.1964). It creates additional rights insofar as the purpose is to prevent outrageous conduct and preserve the democratic process within the union organization by those in union positions of trust and power, while the rights protected by the constitution prevent objectionable conduct on the part of the government. *McDonald v. Oliver*, 525 F.2d 1217 (5th Cir.), *cert. denied*, 429 U.S. 817, 97 S.Ct. 61, 50 L.Ed.2d 77 (1976). Appellant has no claim that additional rights were created by PELRA, since

he is not dealing with a labor organization as a member and employee; but instead, appellant, as an employee, is dealing directly with his employer, the state. The federal statutes regulate union conduct so as to guarantee freedom of expression when the alleged oppression is not by a governmental entity, hence no governmental action exists. In this case, the state is the alleged oppressor, and freedom of expression is protected by the federal and state constitutions.

**3.** The law of the State of Minnesota with regard to official immunity is clear. "A public official charged by law with duties which call for the exercise of his judgment of discretion is not personally liable to an individual for damages unless he is guilty of a willful or malicious wrong." *Susla v. State*, 311 Minn. 166, 175, 247 N.W.2d 907, 912 (1976).

draws jurisdiction. *Boston Stock Exchange v. State Tax Commission*, 429 U.S. 318, 320 n.3, 97 S.Ct. 599, 602–03 n.3, 50 L.Ed.2d 514 (1977). We cannot believe that the Congress, in adopting the Civil Rights Act without providing exclusive jurisdiction in the federal courts, intended that 50 different standards of immunity should apply when state courts exercise concurrent jurisdiction in effectuating the specific remedy set out in 42 U.S.C. § 1983.

Most of the cases applying section 1983 to the acts of state officials have been tried in federal courts. While recognizing that a state official is entitled to some immunity in exercising the discretion required by his or her position, the United States Supreme Court has developed the standard of "qualified immunity" in several leading cases. *Scheuer v. Rhodes*, 416 U.S. 232, 247–48, 94 S.Ct. 1683, 1692, 40 L.Ed.2d 90 (1974). *Economou v. Butz*, 438 U.S. 478, 496–98, 98 S.Ct. 2894, 2905–06, 57 L.Ed.2d 895 (1978); *Procunier v. Navarette*, 434 U.S. 555, 561, 98 S.Ct. 855, 859, 55 L.Ed.2d 24 (1978); *O'Connor v. Donaldson*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). In *Scheuer* the Court defined qualified immunity in these words:

> [I]n varying scope, a qualified immunity is available to officers of the executive branch of government, the variation being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct.

416 U.S. at 247–48, 94 S.Ct. at 1692. In *Wood* the Court assured public officials that they "need not exercise their discretion with undue timidity" because qualified immunity would be available to them if their actions are taken "in the good-faith fulfillment of their responsibilities and within the bounds of reason under all the circumstances." 420 U.S. at 321, 95 S.Ct. at 1000. This immunity would be unavailable only if the official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of [the plaintiff] affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to [the plaintiff]." State officials have, of course, "no duty to anticipate unforeseeable constitutional developments." *Id.* at 322, 95 S.Ct. at 1001.

█  We have previously applied the federal standard of qualified immunity in holding a defendant state official not liable under 42 U.S.C. § 1983. *Price v. Sheppard*, 307 Minn. 250, 239 N.W.2d 905 (1976). We quoted with approval the jury instruction from *O'Connor*, 422 U.S. at 577, 95 S.Ct. at 2494–95. *Price*, 307 Minn. at 261, 239 N.W.2d at 912. We will continue to apply the federal standard of qualified immunity in actions under 42 U.S.C. § 1983 brought in state court. The burden of pleading the defense of qualified immunity rests with defendants, *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980), who must establish by a preponderance of the evidence that they have satisfied the standards of *Wood*. *Skehan v. Board of Trustees of Bloomsburg State College*, 538 F.2d 53, 61–62 (3d Cir.), *cert. denied*, 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 588 (1976).

Affirmed in part and remanded for proceedings consistent with this opinion.