In the Matter of **ROCHESTER EDUCATION ASSOCIATION,**
**Rochester, Minnesota, Relator,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 535, Rochester, Minnesota,**
**Respondent.**

No. C3–87–1294.

Court of Appeals of Minnesota.

Dec. 1, 1987.

Eric R. Miller, Oppenheimer, Wolff & Donnelly, St. Paul, for relator.

Paul W. Hetland, Marie C. Skinner, Knutson, Flynn, Hetland & Deans, P.A., St. Paul, for respondent.

Heard, considered and decided by FOLEY, P.J., and LANSING and IVERSON *, JJ.

## OPINION

LANSING, Judge.

Rochester Educational Association (REA) appeals a Public Employment Relations Board (PERB) ruling that teachers involved in a fellowship program established by Winona State University (WSU) in conjunction with Independent School District No. 535 are not public employees included in the district teachers' bargaining unit. We affirm.

* Acting as judge of the Court of Appeals by ap-

## FACTS

This case arises out of an agreement between Independent School District No. 535 and WSU under which students in a WSU master's degree program teach for one academic year in district schools. According to Wayne Erickson, who developed and coordinated the program for WSU, the program focuses on the "entry period" and is intended to develop the skills new teachers need through actual classroom experience and the expertise of permanent teachers.

Under the program, "fellows" teach in Rochester public elementary school classrooms for one full school year, attend two summer academic sessions, and do coursework during the school year. Out of 48 credits, only 12 are given for actual teaching. Because the program is intended to develop first-year teaching skills, WSU requires that applicants have a teaching license, but will not accept applications from individuals who already have teaching experience.

To assist the fellows, five regular school district teachers are assigned as "mentors" to groups of three fellows. Their role is to give the fellows feedback and teaching tips; they do not evaluate performance. With the mentors' guidance, fellows perform regular teaching duties, including preparing lessons, instructing and evaluating students, meeting with parents and the PTA, and doing lavatory and lunchroom duty.

The program is funded solely by a grant of $165,000 from the school district to WSU. That sum, which amounts to $11,000 for each of the 15 fellows, is first applied by WSU to the fellows' tuition ($2,000 each); the remaining $9,000 is paid in periodic installments to each fellow.

Although the record does not indicate that anyone has consulted with the IRS, WSU's office of financial aid does not regard the money paid to fellows as taxable income, and no taxes are withheld from it. The financial aid office has also concluded that the fellows are eligible for student

pointment pursuant to Minn. Const. art. 6, § 2.

deferment status on their student loans. Fellows do not receive insurance or similar benefits from the school district, but are eligible to pay for student insurance benefits through WSU.

WSU regards the fellows as "guests" in the schools to which they are assigned. The school district has the right to remove unsatisfactory fellows from its classrooms at any time. Because of their guest status, and in order to provide a "total" teaching experience, the fellows are under the direct authority of the school principal and must abide by the district's rules, policies and procedures.

In other respects, the district's authority is limited. WSU selects the applicants for the program, and the school district is not involved with interviews or the fellowship contract between the fellows and WSU. Only WSU has the authority to evaluate academic performance or remove fellows from the graduate program. The agreement between WSU and the school district does not provide for the return of funds to the district if a fellow withdraws from the program without finishing the school year. Finally, it appears that problems with individual fellows would be referred to WSU rather than handled through normal school district channels. Similarly, problems between fellows and mentors would go to WSU, with WSU having the option to assign the fellow to a different mentor.

The school district denies that its motivation in funding the program is to save money; according to the associate district superintendent, the program costs the district as much as, or slightly more than, it would have cost to hire teachers for the classroom assignments the fellows fill. The school district does, however, benefit in that staff members assigned as mentors can pick up 15 free graduate credit hours at WSU, and nine staff members are freed up to take special assignments, develop in-staff seminars, go to national meetings and generally integrate new practices and ideas into the teaching system.

## ISSUE

Are licensed teachers teaching in the school district in conjunction with a WSU graduate program "public employees" under Minn.Stat. § 179A.03, subd. 14 (1986)?

## ANALYSIS

Under Minn.Stat. § 179A.03, subd. 2 (1986), the appropriate bargaining unit for teachers is "all the teachers in the district." Subdivision 18 of that statute defines "teacher" as

any public employee * * * employed by a school district:

(1) in a position for which the person must be licensed by the board of teaching or the state board of education * * *.

Minn.Stat. § 179A.03, subd. 18 (1986). PERB's conclusion that the fellows are not "teachers" for purposes of the statute, while entitled to respect, is fully reviewable. *Hibbing Educational Association v. Public Employment Relations Board,* 369 N.W.2d 527, 529 (Minn.1985); *see also Independent School District No. 621 v. Public Employment Relations Board,* 268 N.W.2d 410, 412 n. 5 (Minn.1978).

Because the fellows in the WSU program must be licensed to teach, whether they are defined as teachers turns on whether they are public employees employed by the school district. "Public employee" is defined as "any person appointed or employed by a public employer * * *." Minn. Stat. § 179.03, subd. 14 (1986). While certain employees whose work is temporary or limited are excluded, those exclusions do not apply to the fellows, because their teaching assignments last for an entire school year. Similarly, exceptions to the statutory exclusions do not apply except to demonstrate legislative intent to create a broad definition of "teacher."

In the absence of determinative statutory authority, REA advances two approaches to analyzing the "employment" issue—under common law principles, or the public policies embodied in PELRA.

### Common Law

Every employment relationship is based on an express or implied contract. *Rademaker v. Archer Daniels Midland Co.,*

310 Minn. 240, 246, 247 N.W.2d 28, 31 (1976). Here, the fellows' express contractual relationship is with WSU, not the school district. The issue is thus whether the performance of work which benefits the school district, under the district's control and in return for a stipend provided using district funds, is sufficient to allow the implication of an employment contract between the school district and the fellows.

A line of cases defining the employee status of student nurses addresses a similar issue in the context of workers' compensation. In *Otten v. University Hospitals*, 229 Minn. 488, 40 N.W.2d 81 (1949), the court stated that factors to be considered in determining whether a student nurse was employed by the hospital at which she performed nursing duties included

> hiring, payment of compensation, furnishing of materials or tools, control of the premises where the work is done, the right to hire and fire, and authoritative right to control the means and manner of performance of the work.

*Id.* at 493, 40 N.W.2d at 84–85. Whether the nurses were employees of the institutions to which they had been assigned ("affiliates") or of the enrolling institution depended on the degree of control the enrolling institution retained over their performance. Where the enrolling institution maintained a representative at the affiliate and retained the right to terminate the students' enrollment in the program, the student remained an employee of the enrolling institution for worker's compensation purposes. *Id.* at 495–96, 40 N.W.2d at 86.

This rationale was extended in *Anderson v. Northwestern Hospital*, 229 Minn. 546, 40 N.W.2d 442 (1949), in which the court held that a student nurse remained an employee of the enrolling hospital even though she was assigned to, worked in, and was paid by another hospital. The affiliate hospital did not become her employer while she worked for it, because the enrolling hospital still supervised her training and could withdraw her from the hospital to which she had been assigned and reassign her. *Id.* at 551–52, 40 N.W.2d at 445.

Similarly, in *Krause v. Trustees of Hamline University*, 243 Minn. 416, 68 N.W.2d 124 (1955), the court stated:

> We have repeatedly held that the relationship of employer and employee, even for the purposes of the workmen's compensation act, rests on contract, either express or implied. When the employee here applied for enrollment at Hamline University, *it was understood between the employee and the university that a portion of the employee's studies would involve practical training, during which period she would receive compensation in the form of board and room and she, in turn, would render services. The negotiations for this contractual relationship were carried on between the employee and the university and not with the hospitals.* The agreement was consummated when the employee paid her fees and was enrolled by the university. Under the terms of this agreement she began her employment when she had completed a prescribed period of academic study, at which time she was assigned to the various hospitals selected by the university for practical training. *While the direct benefits of the employee's services were received by the hospital affiliates, it is obvious that the benefits, at least indirectly, ran to the enrolling institution,* since the arrangement was an integral and necessary part of the training program without which the school of nursing could not profitably exist.

*Id.* at 423, 68 N.W.2d at 128–29 (emphasis added). Despite the fact that the student nurses' performance was generally supervised, and their compensation paid, by the affiliate hospital, they were not employees of the affiliate, because the enrolling institution did not relinquish control over them and retained the right to transfer them and determine satisfactory compliance with the curriculum.

These cases indicate that when a student's purpose in doing work is to meet an educational requirement, the institution at

which the student works is not her employer so long as the enrolling institution maintains significant control over the educational aspects of the endeavor. When the "embryo of the 'control' " begins with the educational institution, the affiliate's control over the day-to-day tasks is not decisive. *Compare St. Claire v. Minnesota Harbor Service, Inc.*, 211 F.Supp. 521, 523 (D.Minn. 1962) (temporary employee hired by employment service is an employee of the organization to which he is sent to work if the impetus of the whole affair was the latter organization's determination that certain work needed to be done).

The school district's right to control the fellows' classroom behavior is secondary to WSU's right to set and enforce academic standards, including the requirement that fellows abide by district rules. WSU retains control over both the fellows' acceptance into the program and the requirements for completing the program and maintains a coordinator to resolve problems between the school district and the fellows.

The mode of payment also supports the conclusion that the fellows are not employees of the school district. Because employee status has been rejected even if the secondary institution directly paid the "employee," *Krause*, 243 Minn. at 424, 68 N.W. 2d at 129, the fact that the school district provides the funds out of which the fellows are paid does not require a finding that they are "employees" of the school district.

In view of the need to create a uniform education for the schoolchildren, the district's furnishing of books and teaching materials deserves little weight. Similarly, the school district's control over the premises is necessitated by its ultimate responsibility for the safety and well-being of the children.

Finally, while the school district has the right to remove fellows from its schools, that right is a necessary corollary to its responsibility to the children, especially because the school district is not involved in screening the fellows for admission to the program. Given the academic purpose of the fellows' participation in the program, WSU's exclusive right to discharge fellows from the program itself is of greater importance than the right to remove them from a specific assignment.

In summary, Minnesota case law does not compel reversal of PERB's finding that the fellows are not employees of the school district. They are paid a stipend by WSU, which retains control over their continued participation in a program which has academic, rather than pecuniary, purposes.

### Statutory and Policy Considerations

REA argues that because the fellows do not fall within any of the statutory exclusions from "public employee" status, they must be considered public employees. However, that argument assumes a prior finding that they are public employees employed by the school district. Contrary to REA's assertion, *Finch v. Wemlinger*, 310 N.W.2d 66, 68 (Minn.1981), does not establish a "presumption" that non-excluded individuals are to be considered public employees; rather, it states only that an individual who "clearly" falls under the definition of public employee and does not fit any exclusion is a public employee. *Id.*

REA further argues that Minn.Stat. § 179A.03, subd. 13(b) (1986), which defines "professional employee" to include hospital interns, applies by analogy to make the fellows in this case "public employees." However, that statute does not even make interns "employees" for purposes of the Act, but merely states that if interns are employees, they are "professional employees." *See Physicians National House Staff Association v. Fanning*, 206 U.S. App.D.C. 87, 642 F.2d 492 (1980), *cert. denied*, 450 U.S. 917, 101 S.Ct. 1360, 67 L.Ed. 2d 342 (1981) (refusing to review NLRB finding that the definition of professional employee under virtually identical federal statute does not confer "employee" status on persons who are not already considered "employees").

Finally, REA argues that student status does not preclude employee status, again by analogy to medical intern cases. There is authority on both sides of this question. In *Regents of the University of Michigan*

*v. Michigan Employment Relations Commission,* 389 Mich. 96, 112–13, 204 N.W.2d 218, 226 (1973), the Michigan Supreme Court held that the fact that hospital interns were continually acquiring new skills did not preclude them from being employees for purposes of the employment relations statute. Other states have reached the same result. *See House Officers v. University of Nebraska Medical Center,* 196 Neb. 697, 255 N.W.2d 258 (1977), and cases cited therein.

On the other hand, the National Labor Relations Board has refused to consider hospital interns and residents "employees" for purposes of the National Labor Relations Act, reasoning that

> [s]ince the individuals are rendering services which are directly related to—and indeed constitute an integral part of—their educational program, they are serving primarily as students and not primarily as employees. In our view this is a very fundamental distinction for it means that the mutual interests of the students and the educational institution in the services being rendered are predominantly academic rather than economic in nature. Such interests are completely foreign to the normal employment relationship and, in our judgment, are not readily adaptable to the collective bargaining process.

*St. Clare's Hospital & Health Center,* 229 N.L.R.B. 1000, 1002, 95 L.R.R.M. 1180, 1183 (1977). *See also Cedars-Sinai Medical Center,* 223 N.L.R.B. 251, 91 L.R.R.M. 1398 (1976).

This case differs significantly from the hospital intern cases in that (1) the fellows are not performing work services for the educational institution in which they are enrolled; (2) the institution for which they are working does not directly pay their wages or provide any fringe benefits; and (3) their work for the school district is of substantially shorter duration than the typical hospital internship. The NLRB's distinction between the academic and pecuniary interests of the fellows thus applies with greater force.

Collective bargaining could affect some aspects of the conditions under which the fellows teach. However, it would not affect the academic considerations which motivate the fellows to enter the program. In these circumstances, PELRA's public policy of minimizing unresolved disputes between public employers and their employees, *see* Minn.Stat. § 179A.01 (1986), does not require reversal of PERB's finding that the fellows are not teachers under the Act.

### DECISION

The Public Employment Relations Board's determination that the fellows are not employees of the school district for purposes of collective bargaining under the Public Employment Relations Act is affirmed.

Affirmed.